UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DALE B. ADAMS, et al.,

                               Plaintiffs,

v.                                                                    7:07-CV-1291
                                                                      (GHL)
ALCOA, INC.,

                         Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LOCKS LAW FIRM PLLC                                   ANDREW P. BELL, ESQ.
Counsel for Plaintiff Dale B. Adams
747 Third Avenue, 37th Floor
New York, New York 10017

CRAVATH, SWAINE & MOORE LLP                           DANIEL SLIFKIN, ESQ.
Counsel for Defendant
825 Eighth Avenue
New York, New York 10019

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[1]

      In this action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, a

conditionally certified class of aluminum factory workers contends that Defendant Alcoa Inc.

("Alcoa") failed to compensate them for the time they spent (1) arriving early for shift relief; (2)

donning and doffing protective gear on Alcoa's premises; (3) walking from the locker room to

the work site; and (4) showering at the end of shifts.  (Dkt. No. 42.)  Currently pending before the

Court is Alcoa's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

_____
[1]       This matter is before the undersigned by consent of both parties.  (Dkt. No. 76.)

(Dkt. No. 100.)  Plaintiffs have opposed the motion.  (Dkt. No 106.)  Alcoa has filed a reply.

(Dkt. Nos. 110-111.)  For the reasons that follow, Alcoa's motion is granted.

I.      **FACTUAL AND PROCEDURAL SUMMARY**

Defendant Alcoa owns and operates an aluminum smelting facility located in Massena, New York, commonly referred to as "Massena West."  (Dkt. No. 100-2 ¶ 1; Dkt. No. 106-1 at 2 ¶ 1.)  Massena West opened in 1902 and is the oldest continuously operating aluminum facility in the world.  *Id.*

Massena West is divided into various sections that handle different stages of the aluminum production process.  The sections at issue in this case are the potroom and the ingot department.  In the potroom, smelting potlines reduce certain materials to create molten aluminum.  (Dkt. No. 100-2 ¶ 2; Dkt. No. 106-1 at 2 ¶ 2.)  That molten aluminum is then transferred to the ingot department (also referred to as the "casthouse"), where it is mixed with other elements to create alloys that are cast into round ingots, which can then be fabricated into various materials and product components.  *Id*.

Some employees in the potroom and ingot departments perform certain tasks that require them to be close to molten metal.  (Dkt. No. 100-2 ¶ 3; Dkt. No. 106-1 at 3 ¶ 3.)  Such exposure carries with it a potential for accidents that might lead to injuries.[2]  In order to reduce the risk of injury in the event of an accident in the work area, Alcoa requires employees to wear certain

---

[2]      Alcoa asserts, citing the affidavits of John B. Adey and Steven M. Rombough (the heads of the ingot department and the potroom) that working in the potroom and ingot department "does not pose significant hazards to the employees."  (Dkt. No. 100-2 ¶ 3.) Plaintiffs assert that such work does pose significant hazards, citing the declarations of employees Wayne Debien, Roger Gollinger, Wesley Bacon, Frank Begg, Tracy Hall, and Robert Boyer.  (Dkt. No. 106-1 at 3 ¶ 3.)

items of Alcoa-provided personal protective equipment ("PPE").  (Dkt. No. 100-2 ¶ 4; Dkt. No. 106-1 at 3 ¶ 4.)  In the potroom and the ingot department, employees are always required to wear flame retardant ("FR") shirts and pants, metatarsal (or steel-toed) boots, spats, hard hats with snoods that cover the back of the neck, and safety glasses.  (Rombough Aff., Dkt. No. 100-13 ¶ 6; Adey Aff., Dkt. No. 100-25 ¶ 6.)  When performing certain tasks, employees are also required to wear ear plugs[3], gloves, FR jackets, dust masks[4], and face shields.  *Id*. ¶ 7.  Employees put on these additional items during the course of their paid shifts.  *Id*.

Potroom employees are given eleven FR shirts and nine pairs of FR pants.  (Rombough Aff., Dkt. No. 100-13 ¶ 10.)  Ingot department employees are given between seven and eleven sets of FR clothing.  (Adey Aff. ¶ 11.)  Alcoa prohibits employees from laundering their FR clothing at home, but does not prohibit employees from keeping fresh FR clothing at home.  (Rombough Aff., Dkt. No. 100-13 ¶ 10; Adey Aff., Dkt. No. 100-25 ¶ 11.)  Employees may thus put on ("don") and take off ("doff") their FR clothing at home.  In practice, most employees choose to don and doff the FR clothing in a locker room at Massena West, either out of convenience because the FR clothing must be laundered at Massena West (Boyer Decl. ¶ 9; Hall Decl. ¶ 9; Bregg Decl. ¶ 9; Gollinger Decl. ¶ 9; Debien Decl. ¶ 9) or due to concerns about exposing family members to the "dirt and dust on the FR clothing, which is contaminated with hazardous chemicals and other substances."  (Bacon Decl. ¶ 9.)

Plaintiffs are Alcoa employees who worked in the potroom and/or ingot department at

_____

[3]      Ingot department employees are required to wear ear plugs at all times.  (Adey Aff. ¶ 6.)

[4]      Ingot department employees are never required to wear dust masks, but may do so if they wish.  (Adey Aff. ¶ 8.)

3

Massena West between September 15, 2007, and September 15, 2010.[5] (Dkt. No. 100-2 ¶ 5; Dkt. No. 106-1 at 3 ¶ 5.) Plaintiffs seek compensation under the FLSA for (1) time spent arriving early for shift relief; (2) time spent donning and doffing protective gear on Alcoa's premises; (3) time spent walking from the locker room to the work site; and (4) time spent showering at the end of shifts. (Dkt. No. 42.)

After the parties consented to the jurisdiction of a magistrate judge (Dkt. No. 76), I entered an order setting a special briefing and discovery schedule for Alcoa's motion for summary judgment. (Dkt. No. 78.) Pursuant to the order, Alcoa filed its motion for summary judgment on November 15, 2010. (Dkt. No. 100.) Thereafter, Plaintiffs had until December 3, 2010, to serve additional discovery requests on Alcoa and until January 28, 2011, to complete that additional discovery. (Dkt. No. 78 at 3.) Plaintiffs filed their opposition to the motion for summary judgment on February 17, 2011. (Dkt. No. 106.) Thereafter, Alcoa had until March 2, 2011, to serve additional discovery requests on Plaintiffs and until April 22, 2011, to complete the additional discovery. (Dkt. No. 78 at 3.) Alcoa filed its reply papers on May 6, 2011. (Dkt. Nos. 110-11.)

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that

---

[5]    Plaintiff Dale Adams is an exception and did not work during that period. Plaintiff Adams worked at Massena West from 1972 until his retirement on May 1, 2005. (Dkt. No. 100-2 at 2 n. 1.)

no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[6] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.   ANALYSIS

Plaintiffs' claims arise under the FLSA.  (Dkt. No. 42.)  The FLSA "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act."  *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-603 (1944).  The operative complaint alleges that arriving early for shifts, donning and doffing the PPE, showering after shifts, and walking between the locker room and the potroom or ingot department constitute compensable work under the FLSA.  (Dkt. No. 42 ¶ 1.)  Alcoa moves for summary judgment of Plaintiffs' claims, arguing that these activities are not compensable.  (Dkt. No. 100.)

---

[6]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

### A.  Claim Regarding Shift Relief

The operative complaint alleges that Alcoa must compensate Plaintiffs for arriving early for scheduled shifts.  (Dkt. No. 42 ¶ 1.)  Alcoa moves for summary judgment of this claim, arguing that the undisputed evidence shows that Alcoa does not require employees to arrive early for shifts.  (Dkt. No. 100-1 at 21.)  Plaintiffs concede that Alcoa is entitled to summary judgment of this claim.  (Dkt. No. 106 at 1 n.1.)  Therefore, Alcoa's motion for summary judgment dismissing this claim is granted.

### B.  Claim Regarding Donning and Doffing of Protective Equipment

The operative complaint alleges that Alcoa must compensate Plaintiffs for time spent donning and doffing their PPE at Massena West.  (Dkt. No. 42 ¶ 1.)  Alcoa argues that it is entitled to summary judgment dismissing this claim.  (Dkt. No. 100-1 at 8-16.)  Specifically, Alcoa argues that (a) donning and doffing is not compensable "work" under the FLSA because the PPE is not "integral and indispensable" to Plaintiffs' jobs; (b) even if the PPE is integral and indispensable, Plaintiffs spend only a *de minimis* amount of time donning and doffing the PPE and the time is therefore not compensable; and (c) even if the PPE is "integral and indispensable" and the time spent donning and doffing is more than *de minimis*, the time is still non-compensable under the parties' collective bargaining agreement.  *Id*.  The Court will address only Alcoa's first argument, as it is dispositive.

The issue of whether employees should be compensated for donning and doffing protective clothing has troubled courts for more than sixty years.  In 1946, the Supreme Court held that the FLSA required employers to pay employees for donning and doffing aprons and overalls.  *Anderson v. Mount Clemons Pottery Co.*, 328 U.S. 680, 691-93 (1946).  In response to

that decision, Congress enacted the Portal-to-Portal Act in 1947.  29 U.S.C. § 254(a).  Under the

Portal-to-Portal Act, no compensation is required for "activities which are preliminary to or post-

liminary to . . . principal activity or activities."  29 U.S.C. § 254(a)(2).  As the Second Circuit has

recently noted, "substantial case law discusses the distinction between 'preliminary and

postliminary' activities and the 'principal activities of employment.'  Nevertheless, the

distinction remains elusive in application."  *Edwards v. City of New York*, No. 08 Civ. 3134,

2011 WL 3837130, at * 6 (Aug. 29, 2011) (punctuation altered).

In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court considered whether

donning and doffing clothes were "principal activities" or merely "preliminary or postliminary"

activities within the meaning of the Portal-to-Portal Act.  The Court noted that, under the Act,

"changing clothes . . . under normal conditions" was non-compensable, but held that "activities

performed either before or after the regular work shift . . . are compensable . . . if those activities

are *an integral and indispensable* part of the principal activities for which covered workmen are

employed . . . " *Steiner*, 350 U.S. at 249, 256 (emphasis added).  In other words, the Court held

that "an 'integral and indispensable' activity is itself a principal activity for purposes of the Portal

Act."  *Perez v. Mountaire Farms, Inc.*, __ F.3d __, 2011 U.S. Dist. LEXIS 11547, at *13, 2011

WL 2207110, at *5 (4th Cir. June 7, 2011).

In determining whether donning and doffing work clothes and showering after shifts were

integral and indispensable to the principal activities of battery factory workers,  the Court

described in detail the toxic atmosphere of the battery plant.  I will quote the opinion at length

because the Second Circuit's stance on donning and doffing claims relies heavily on the

particular facts of *Steiner*:

> All of the production employees . . . customarily work at or near the various chemicals used in the plant. These include lead metal, lead oxide, lead sulphate, lead peroxide, and sulphuric acid. Some of these are in liquid form; some are in powder form, and some are solid. In the manufacturing process, some of the materials go through various changes and give off dangerous fumes. Some are spilled or dropped, and thus become a part of the dust in the air. In general, the chemicals permeate the entire plant and everything and everyone in it. Lead and its compounds are toxic to human beings. Regular exposure to atmosphere containing 1.5 milligrams or more of lead per 10 cubic meters is regarded by the medical profession as hazardous and involving the possibility of lead intoxication or lead poisoning. In battery plants . . . it is 'almost impossible,' it was testified, to keep lead concentration in the air 'within absolutely safe limits,' and in petitioners' plant 'lead oxide was on the floor and in the air and on the plates which employees handled.' . . . The primary ways in which lead poisoning is contracted are by inhalation and ingestion; [e].g. by taking in particles through the nose or mouth, an open cut or sore, or any other body cavity. The risk is 'very great' and even exists outside the plant because the lead dust and lead fumes which are prevalent in the plant attach themselves to the skin, clothing and hair of the employees. Even the families of battery workers may be placed in some danger if lead particles are brought home in the workers' clothing or shoes. Sulphuric acid in the plant is also a hazard. It is irritating to the skin and can cause severe burns. When the acid contacts clothing, it causes disintegration or rapid deterioration. Moreover, the effects of sulphuric acid make the employee more susceptible than he would otherwise be to contamination by particles of lead and lead compounds. Petitioners, like other manufacturers, try to minimize these hazards by plant ventilation, but industrial and medical experts are in agreement that ventilation alone is not sufficient to avoid the dangers of lead poisoning. Safe operation also requires the removal of clothing and showering at the end of the work period.

*Steiner*, 350 U.S. at 249-50. In light of these facts, the Supreme Court found "no difficulty"

concluding that the employees should be compensated for donning, doffing, and showering

because "it would be difficult to conjure up an instance where changing clothes and showering

are more clearly an integral and indispensable part of the principal activity of the employment

than in the case of these employees." *Id*. at 256.  The Supreme Court concluded that the battery

plant workers should be compensated for donning and doffing because "they must make

extensive use of dangerously caustic and toxic materials, and are compelled by circumstances,

including vital considerations of health [and] hygiene, to change clothes and to shower in

facilities which state law requires their employer to provide . . ."  *Steiner*, 350 U.S. at 248.

In the years since *Steiner*, the Courts of Appeals have adopted different approaches to

determining whether donning and doffing particular protective gear is "integral and

indispensable" to employees' work.[7]  James Watts, *Dressing for Work is Work: Compensating

Employees Under the Fair Labor Standards Act for Donning and Doffing Protective Gear*, 87 U.

Det. Mercy L. Rev. 297 (2010).  The Tenth Circuit has applied an "exertion" test, defining

compensable integral and indispensable work as "physical or mental exertion (whether

burdensome or not) controlled or required by the employer and pursued necessarily and primarily

for the benefit of the employer."  *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125 (10th Cir. 1994).[8]  Under

the Ninth Circuit's formulation, where "the changing of clothes on the employer's premises is

required by law, by rules of the employer, or by the nature of the work, the activity may be

---

[7]     The Supreme Court decided a donning-and-doffing case in 2005, but in that action
the employer did not challenge the lower courts' ruling that the donning and doffing of the
unique protective gear in question was "integral and indispensable."  *IBP, Inc. v. Alvarez*, 546
U.S. 21, 32 (2005).  The Supreme Court considered only whether various pre- and post-donning
activities were compensable.

[8]     *Reich* was decided before the Supreme Court's decision in *Alvarez*.  Several
district courts have suggested that the Tenth Circuit would likely take a different approach to the
doffing/donning question if the case were decided now.  *See e.g. Garcia v. Tyson Foods, Inc.*,
474 F. Supp. 2d 1240, 1246 (D. Kan. 2007).  The Tenth Circuit has acknowledged that questions
have arisen about its analytical method, but has not yet revisited the issue.  *Garcia v. Tyson
Foods, Inc.*, 534 F.3d 1320 (10th Cir. 2008).

9

considered integral and indispensable to the principal activities." *Balaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004). Similarly, the Eleventh Circuit examines three factors when determining whether an activity is integral and indispensable: (1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer. *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007). The Sixth Circuit has explicitly adopted the approach used by the Ninth and Eleventh Circuits. *Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010). And, recently, the Fourth Circuit adopted the Ninth Circuit's test, holding that "the donning and doffing of protective gear at the beginning and the end of a work shift are acts 'integral and indispensable' to the employer's principal activity when the donning and doffing are: 1) necessary to the principal work performed; and 2) primarily benefit the employer." *Perez*, 2011 WL 2207110, at *7.

The Second Circuit, in contrast to the other circuits, interprets the phrase "integral and indispensable" extremely narrowly. In *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007), employees of a nuclear power station sought compensation for, *inter alia*, donning and doffing required PPE.[9] The Second Circuit defined "indispensable" as "necessary" or "required." *Id.* at 592, 594. The Second Circuit took great care, however, to emphasize that "indispensable" and "integral" were separate terms and that an activity must be indispensable *and* integral to be compensable. The Second Circuit noted that the PPE was "indispensable"

_____

[9] The PPE at issue in *Gorman* included metal capped safety boots, safety glasses, and a helmet.

10

because it was required[10], but "[t]he donning and doffing of generic protective gear is not

rendered *integral* by being required by the employer or by government regulation." *Id.* at 594

(emphasis added).  The court defined "integral" very narrowly.  The Second Circuit stated that

*Steiner*:

> supports the view that when work is done in a lethal atmosphere, the
> measures that allow entry and immersion into the destructive element
> may be integral to all work done there, just as a diver's donning of a
> wetsuit, oxygen tank and mouthpiece may be integral to the work
> even though [the donning] is not the . . . task that the employer wishes
> done.

*Id*. at 593.  Applying that narrow standard to the case before it, the Second Circuit concluded that

the nuclear plant employees at issue in *Gorman*, unlike the employees in *Steiner* or the employee

in the diving hypothetical, did not work in an area of the plant with a "lethal atmosphere."  *Id*.

Accordingly, the Second Circuit ruled that while the PPE might be "indispensable," it was not

"integral," and that, accordingly, the employees were not entitled to compensation for donning

and doffing the PPE.  *Id*. at 593.

   Here, Alcoa argues that donning and doffing the PPE is neither "indispensable" nor

"integral."  Alcoa notes that Plaintiffs are not required to don and doff their PPE at Massena

West, that Plaintiffs are given multiple sets of work clothes, and that Plaintiffs can therefore don

and doff at home just as they would with everyday clothing.  (Dkt. No. 100-1 at 12-13; Dkt.  No.

110 at 7-8.)  I construe this as an argument that donning and doffing the PPE at Massena West is

not "indispensable."

   In support of this argument, Alcoa cites a May 31, 2006, memorandum issued by the

_____

   [10]  It is not clear from the text of *Gorman* whether the PPE was required by the
employer, by government regulation, or by both.

Department of Labor.[11]  (Dkt. No. 110 at 7.)  In the memorandum, the Department of Labor

advised that:

> donning and doffing of required gear is within the continuous
> workday only when the employer or the nature of the job mandates
> that it take place on the employer's premises.  It is our long-standing
> position that if employees have the option and ability to change into
> the required gear at home, changing into that gear is not a principal
> activity, even when it takes place at the plant.

*Wage & Hour Adv. Mem.* No. 2006-2, at 3 (May 21, 2006).  Courts applying this memorandum

have concluded that "a rule which categorically defines donning and doffing time as non-

compensable when an employee has an opportunity to change at home is consistent with the

Department of Labor's longstanding interpretation of the FLSA."  *Albrecht v. The Wackenhut*

*Corp.*, No. 07-CV-6162, 2009 U.S. Dist. LEXIS 88073, at *26, 2009 WL 3078880, at *8

(W.D.N.Y. Sept. 24, 2009) *aff'd*, 379 F. App'x 65 (2d Cir. 2010); *Bamonte v. City of Mesa*, 598

F.3d 1217 (9th Cir. 2010).

　　　　Plaintiffs do not cite any authority contrary to the Department of Labor memorandum,

*Albrecht*, or *Bamonte*.  They assert that a change-at-home policy "while potentially relevant, can

certainly not be determinative," but cite no authority for that proposition.  (Dkt. No. 106 at 15.)

Plaintiffs' primary argument regarding this issue is factual rather than legal.  Plaintiffs assert that

they "did not don or doff their fire-retardant clothing at home, and in practice, Alcoa prohibited

them from donning and doffing at home, as they were instructed not to launder their fire-

---

[11]　　　Such memoranda do not warrant deference under *Chevron U.S.A. Inc. v. Natural
Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but are "entitled to respect" to "the extent
that [they] have the power to persuade," pursuant to *Skidmore v. Swift & Co.*, 323 U.S. 134
(1944).  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Conzo v. City of New York*,
667 F. Supp. 2d 279, 285 (S.D.N.Y. 2009).

retardant clothing at home and were not supposed to take them off the Massena West property."
(Dkt. No. 106-1 at 8-9 ¶ 10.)  Plaintiffs cite the declarations of six employees to support this
assertion.  However, only one of the declarations - the declaration of Wesley Bacon - states that
employees "are not supposed to take work clothes off of the Massena West property."  (Bacon
Decl. ¶ 9.)  When asked about this statement at his deposition, Mr. Bacon contradicted himself.
Mr. Bacon was asked "if you wanted to take the FR clothing home . . . you could put it on at
home?"  He answered "I *could* but I *wouldn't*."  (Bacon Dep. 119:12-16, Dkt. No. 111-1 at 30)
(emphasis added).  A "party opposing summary judgment may not create a triable issue of fact
'merely by submitting an affidavit that disputes his own . . . sworn testimony.'" *Fadia v. New
Horizon Hospitality*, 743 F. Supp. 2d 158, 166 (W.D.N.Y. 2010) (quoting *Rule v. Brine, Inc.*, 85
F.3d 1002, 1011 (2d Cir. 1996)).  Accordingly, Plaintiffs have not raised a triable issue and it is
undisputed that employees are not required to don and doff their PPE at Massena West.
Therefore, the Court finds that donning and doffing PPE at Massena West are not indispensable
to Plaintiffs' principal activities and are not compensable under the FLSA.

As to the issue of whether the PPE itself is "integral," Alcoa, relying on *Gorman*, argues
that Plaintiffs here are not entitled to compensation for donning and doffing their PPE because
the equipment is not 'necessary for immersion into a lethal atmosphere.'  (Dkt. No. 100-1 at 13.)
Plaintiffs characterize Alcoa's argument as "twisted" and assert that the argument relies on
language "which is absent from *Gorman* itself and has been rejected by other circuits."  (Dkt. No.
106 at 15.)  The interpretation that Alcoa asserts is not "twisted" and is not "absent" from
*Gorman* itself.  Rather, it accurately reflects *Gorman*.  *See Perez*, 2011 WL 2207110, at *6 ("In
*Gorman* [], the court held that donning and doffing is only 'integral and indispensable' to a

13

principal activity when the principal activity is performed in a lethal environment."). It is true that *Gorman*'s interpretation of *Steiner* is unusual and that courts in other circuits have rejected it. *See Franklin*, 619 F.3d at 619-20. But this Court is, of course, bound by *Gorman*. The issue here, then, is whether the potroom and the ingot department are "lethal" atmospheres and, if they are, whether Plaintiffs' PPE allows entry and immersion into that atmosphere.

Alcoa asserts that "it is undisputed that Plaintiffs are not exposed to dangerous levels of any chemical contaminants. Alcoa's managers have testified to that effect." (Dkt. No. 110 at 6.) The affidavits that Alcoa cites, however, do not support that proposition. Each states that:

> As a convenience, Alcoa allows potroom [and ingot department] employees to use the shower facilities at Massena West if they choose to do so. Alcoa does not, however, require potroom [and ingot department] employees to shower after their shifts. Certain other Massena West employees, who are exposed to a sufficiently high level of certain chemicals during their work, are required to shower and are compensated for that time. None of the employees in the potroom [or ingot department], however, are required to shower.

(Dkt. No. 100-13 ¶ 12; Dkt. No. 100-25 ¶ 13.) This evidence does not establish that "Plaintiffs are not exposed to dangerous levels of any chemical contaminants."[12] Therefore, Alcoa has not "cit[ed] to particular parts of materials in the record" showing that no genuine issue of material fact exists on this issue. Fed. R. Civ. P. 56(c)(1).

In addition to citing the managers' affidavits, Alcoa argues that "Plaintiffs . . . had ample opportunity to discover Alcoa's safety and industrial hygiene records, to depose Alcoa's witnesses and to retain experts in workplace safety and industrial hygiene. Yet all that Plaintiffs can offer in an attempt to paint the Massena plant as 'lethal' are declarations from six plant

---

[12]     As discussed below, however, these declarations do establish that showering after shifts is not "indispensable" to Plaintiffs' principal activities.

workers . . ."  (Dkt. No. 110 at 5.)  Alcoa is arguing, essentially, that it is entitled to summary

judgment of this issue because Plaintiffs "cannot produce admissible evidence to support the

fact" that Massena West is a "lethal" environment.  Fed. R. Civ. P. 56(c)(1).  Alcoa is correct.

   In opposition to the motion for summary judgment, six Alcoa employees declare that their

"daily activities . . . posed significant hazards to [them] and other employees."  (Debien Decl. ¶

5; Gollinger Decl. ¶ 5; Bacon Decl. ¶ 5; Bregg Decl. ¶ 5; Hall Decl. ¶ 5; Boyer Decl. ¶ 5.)  The

employees declare that these "significant hazards" included fluoride gas,[13] ore and fluoride dust,[14]

heat,[15] coal tar pitch fumes,[16] burn risks,[17] high power electricity,[18] chlorine gas,[19] smoke,[20]

---

[13]   (Debien Decl. ¶ 5.)

[14]   (Boyer Decl. ¶ 5;Debien Decl. ¶ 5; Gollinger Decl. ¶ 5.)

[15]   (Boyer Decl. ¶ 5; Bregg Decl. ¶ 5; Debien Decl. ¶ 5; Gollinger Decl. ¶ 5; Hall Decl. ¶ 5.)

[16]   (Debien Decl. ¶ 5; Gollinger Decl. ¶ 5.)

[17]    (Bacon Decl. ¶ 5; Boyer Decl. ¶ 5; Bregg Decl. ¶ 5; Gollinger Decl. ¶ 5; Hall Decl. ¶ 5.)

[18]   (Gollinger Decl. ¶ 5.)

[19]   (Bacon Decl. ¶ 5; Bregg Decl. ¶ 5.)

[20]   (Bacon Decl. ¶5.)

15

burning alloys,[21] oil mist in the air,[22] haze and fog,[23] and heavy mobile equipment hazards.[24]

Alcoa's attorneys deposed each of the employees after they filed their declarations.  At the depositions, Alcoa's attorneys asked each employee detailed questions about the dangers he declared he faced.  The employees' answers revealed that either they did not actually know whether the conditions to which they referred were "significant hazards"[25] or that the PPE that they don and doff in the changing area does nothing to protect them from the perceived danger.[26] The testimony thus does not raise a triable issue of fact that employees were exposed to a "lethal" atmosphere at Massena West.

Plaintiffs had ample opportunity to discover Alcoa's testing records or to retain experts to perform independent tests.  Plaintiffs did not do so.  Accordingly, the Court concludes that there

---

[21]     (Bacon Decl. ¶ 5.)

[22]     (Bacon Decl. ¶ 5.)

[23]     (Bacon Decl. ¶ 5.)  Mr. Bacon clarified at his deposition that by "haze and fog in the plant," he was referring again to smoke and oil mist.  (Bacon Dep., Dkt. No. 111-1 at 110:7-111:11.)

[24]     (Boyer Decl. ¶ 5.)

[25]     (Debien Dep., Dkt. No. 111-6 at 78:24-79:4) (fluoride gas); (Gollinger Dep., Dkt. No. 111-4 at 153:8-23, 154:11-21) (fluoride dust); (Gollinger Dep. 111-4 at 156:12-15, 157:6-14) (ore dust); (Boyer Dep., Dkt. No. 111-3 at 118:19-119:3; Debien Dep., Dkt. No. 111-6 at 80:3-21) (dust); (Debien Dep., Dkt. No. 111-6 at 82:7-20; Gollinger Dep., Dkt. No. 111-4 at 165:8-166:24) (coal tar pitch fumes); (Gollinger Dep.,Dkt. No. 111-4 at 147:9-148:11) (burn risks); (Bacon Dep., Dkt. No. 111-1 at 93:2-94:17; Bregg Dep., Dkt. No. 111-2 at 113:4-8) (chlorine gas); (Bacon Dep., Dkt. No. 111-1 at 96:13-15) (smoke); (Bacon Dep., Dkt. No. 111-1 at 104:4-10) (burning alloys); (Bacon Dep., Dkt. No. 111-1 at 106:16-21) (oil mist)

[26]     (Boyer Dep., Dkt. No. 111-3 at 120:5-7) (dust); (Boyer Dep., Dkt. No. 111-3 at 119:4-120:4; Bregg Dep., Dkt. No. 111-2 at 116:2-8; Gollinger Dep., Dkt. No. 111-4 at 150:22-151:4; Hall Dep., Dkt. No. 111-5 at 88:16-25) (heat); (Bregg Dep., Dkt. No. 111-2 at 116:9-13) (chlorine gas); (Bacon Decl., Dkt. No. 111-1 at 96:16-97:10) (smoke)

16

is no evidence in the record from which a reasonable juror could conclude that Massena West is a "lethal" environment.

Even if Plaintiffs had raised a triable issue of fact that the atmosphere at Massena West is "lethal," they have not raised a triable issue of fact that their PPE "allow[s] entry and immersion into the destructive element." *Gorman*, 488 F.3d at 593. The undisputed facts show that Plaintiffs can enter the potroom and the ingot department without any PPE, and in fact did so for many years. Plaintiff Dale Adams testified at his deposition that FR clothing was not required until sometime in the 1990s. (Deft. Ex. 2 at 172:5-10.) Until that time, he worked in the ingot department wearing cotton long-sleeved clothing, metatarsal boots, and safety glasses. (*Id.* at 171:3-25.) Similarly, FR clothing was not required in the potroom until the 1990s. (Gollinger Dep., Dkt. No. 111-4 at 108:7-110:9.) Moreover, as cited above in Note 26, the six employees admit that their PPE does not protect them against many of the dangers that they opine that they face.

Because Plaintiffs have not raised a triable issue of fact that the PPE is either integral or indispensable to their work at Massena West, Alcoa's motion for summary judgment dismissing the claim regarding the donning and doffing of PPE is granted.

### C.    Claim Regarding Walking Time

Plaintiffs claim that they are entitled to compensation for time spent "walking to and from the changing area, work areas and break areas." (Dkt. No. 42 ¶ 1.) Alcoa argues that it is entitled to summary judgment dismissing this claim. (Dkt. No. 100-1 at 19.) Alcoa is correct.

"[A]ny walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last activity" is compensable under the FLSA. *IBP*

17

*v. Alvarez*, 546 U.S. 21, 37 (2005).  The parties agree that if this Court determines that donning and doffing is compensable, then the walking time is also compensable.  (Dkt. No. 100-1 at 19-20; Dkt. No. 106 at 17-18.)  As discussed above, the time that Plaintiffs spend donning and doffing is not a principal activity because it is not integral to the employees' work and is thus not compensable.  Thus, the employees' walking time, which occurs *before* the employees' first principal activity and *after* the end of the employees' last principal activity, is not compensable, either.  Therefore, Alcoa's motion for summary judgment dismissing Plaintiffs' claim for compensation for their walking time is granted.

### D.   Claim Regarding Showering

Plaintiffs allege that they are entitled to compensation for time spent showering after their shifts.  (Dkt. No. 42 ¶ 1.)  Alcoa moves for summary judgment dismissing this claim, arguing that Plaintiffs are not entitled to compensation because Alcoa does not require them to shower.[27]  (Dkt. No. 100-1 at 21-22.)  Alcoa is correct.

As with donning and doffing, showering is compensable only if it is "integral and indispensable" to a principal activity.  *Steiner*, 350 U.S. at 248.  As discussed above, an activity is "indispensable" if it is "necessary" or "required."  *Gorman*, 488 F.3d at 592, 594.  Here, it is undisputed that Alcoa does not require Plaintiffs to shower.  (Dkt. No. 100-2 ¶ 19; Dkt. No. 106-1 ¶ 19.)  Thus, showering is not "indispensable."  Moreover, as discussed above, there is no evidence that the atmosphere at Massena West is the type of "lethal" environment that renders PPE and showering "integral" to the work of its employees.  Therefore, Alcoa's motion for

---

[27]     Plaintiffs do not directly address this argument in their opposition brief, but assert that showering was necessary and recommended by Alcoa.  (Dkt. No. 106 at 4.)

summary judgment dismissing Plaintiffs' claim regarding showering is granted.

**ACCORDINGLY**, it is hereby

**ORDERED** that Alcoa's motion for summary judgment (Dkt No. 100) is **GRANTED**.

Dated: September 27, 2011
          Syracuse, New York

George H. Lowe
United States Magistrate Judge

19